Mr. Morris for the appellant and Mr. Williams for the appellee. Mr. Morris, may it please the court, first Mr. Williams in the state brief was correct to point out that in my argument regarding counsel conceding guilt in regards to an opening statement, that language and the conclusion being I don't believe okay was not in my brief and it was appropriate for counsel to point that out and I apologize to the court for that oversight. It does not however in my opinion detract from or negate the argument that I made in my brief that there were admissions by counsel of my client's guilt that occurred throughout primarily our group and that to that extent since it was not consented to by Mr. Mcspadden that my client was prejudiced and therefore the court, Judge Griffith in his ruling was in error in granting the state's motion to dismiss. Primarily when one examines, well first obviously your honors have read the briefs in the case and have looked at the arguments. It was very difficult to follow what trial counsel was saying and to understand what his theory of the case was. But there was one particular moment which is I believe on a supplemental record pages 938-941 in this case where essentially trial counsel makes an argument regarding accountability that is an argument that the state's attorney would make. And he states he didn't do anything to suggest he had an intent to kill anybody. I believe referring to Mr. Mcspadden, okay. And the fact is this boy died. I can't bring him back. Okay I can't emphasize enough to you what a horror story it is. I will mention some things about that. It's going to go on. It shouldn't be labored, okay. But the fact of the matter is he joined a common enterprise. He was accountable for what they were going to do coming down that alley because he joined that group after being told what they were going to do. They called and he came and he met and he was told they were going to go down there and he went with them. Was he so innocent? No one has to die. And there was no good day to die. But he was not so guilty that went down that alley. Your Honor, I would submit to the court that that was an admission of Mr. Mcspadden's guilt by reason of accountability. Trial counsel used the language of accountability in the same manner that a prosecutor would use the language of accountability. Was he found guilty based upon accountability? No. Well then how does that assist your argument here today? Because I don't believe that you can ever admit your fine skill regardless of whether that's the theory that you're ultimately convicted of or not. I mean what would have happened in this case, Your Honor, had the jury not come back with a specific verdict that Mr. Mcspadden personally discharged the firearm in this case? What's the argument about? Well, do you want me to answer that question? I'm posing a rhetorical question, but I'm sure you can answer it, Judge. Oh no, don't be so sure of that. But I think that provides a conundrum. But regardless of what the theory is, an attorney is ineffective and I believe there's prejudice where you admit your client's guilt as was And we don't know obviously what the discussions in the jury room were, but I think it's irrelevant whether the jury signed a verdict that he personally discharged the firearm or not when your attorney is in front of the jury saying that you're accountable. And obviously as I pointed out in the position before Judge Griffith and Decatur, it took her, what, ten seconds before she was up in her rebuttal argument to argue precisely what counsel had done in that case and that essentially that there had been admission by counsel of Mr. Mcspadden's guilt by reason of accountability. And I think that, you know, I get to prejudice in a couple minutes. I don't know how one evaluates prejudice when your attorney has admitted your guilt. You know, if there are ten nuns and ten priests at State Madison in Chicago who see a person shoot and kill another person, that person, the victim, is And, you know, you have all these people, and the person's not insane. There's no doctor who will say the person's insane. And the case goes to trial and the attorney says, well, my client's guilty. You still don't have a fair trial. I don't care what all the other evidence is. I don't care how strong it is. The purpose of a trial is to contest the state's ability to prove you guilty beyond a reasonable doubt. And therefore, regardless of the strength of the evidence of the case, I believe there's prejudice when an attorney admits their client's guilt. Now, I don't think that's what trial counsel meant to do. I mean, if you look at the arguments in the case, you know, they were disjointed. It appeared to be kind of a stream of consciousness by trial counsel in the case. And there were, as Mr. Williams points out, there were moments in there where he's contesting, it seems, Mr. McSpadden's guilt. Though, quite frankly, if you look at the argument, I don't remember the word, the state has not proven the case beyond a reasonable doubt. I'm sure it may be in there, but in a case in which there's no self-defense, there is no insanity, and your defense really in the case, the only defense you have is the state can't prove the case beyond a reasonable doubt because of the foibles of the various witnesses in the case and their lack of credibility for whatever reason. You've got to say that about 15,000 times. Obviously, I'm exaggerating, but that's not done either. So that was the primary example, and again, I think it's important to note that because the prosecutor in the case was up on her feet in seconds emphasizing that point to the jury in this case, and as any good prosecutor would. And so I believe on that basis, there was an admission of guilt. I believe that by reason of accountability. I believe that there were other instances, though obviously counsel disagrees with some of the interpretation of them, in discussing the testimony of Miss Johnson, who was the lady who testified. She identified a photo of Mr. McSpadden, said that she had seen him from 100 to 500 yards away putting a gun in his waistband after she had heard shots near the alley. Counsel in his argument says, when you're trying to add up all the evidence that you hear of the people you talk to, what is their reason to falsify? She, meaning Miss Johnson, has no reason to falsify. But when you get in here, and the evidence on the witness stand to judge the credibility, what did go on there? Did some guy hand him something or not? Okay. Let's assume you believe he had a weapon. Okay. Did he put it in his waistband? Not put it in his waistband? You are going to believe, no matter what I say, later on in the day, he's going to have a weapon. Okay? So let's get past that. Now, the only way that I can interpret that is that I don't see that as sarcastic. I see that as counsel conceding that Mr. McSpadden had a gun on the scene out there, in a case in which there's two shooters, and there's one person dead and another person who's severely wounded. To me, obviously people can disagree. I know the state does. But to me, that's an admission that Mr. McSpadden was out there with a gun. Shortly after that, counsel states that he is back at his home. He is not headed down the block towards the Van Dyke store, which is where the original fisticuffs had occurred that my client wasn't involved in. He is back at his home. Okay. And there's rumors in the neighborhood that these guys are coming. Legions is coming. Jamaal is coming. What are they coming for? So this is the group opposed to Mr. McSpadden. What are they coming for? We know what they are coming for. The argument is, I don't know, is it trying to make some kind of self-defense argument? I don't think so. Self-defense wasn't the defense that was presented in the case. And it also, by argument, infers that Mr. McSpadden, therefore, would have had a reason to go get help. The exact opposite of what you want this jury to believe, when your argument can only be that the state cannot prove the case beyond a reasonable doubt. But there are other instances that I point out in my brief, Your Honors, and I believe that counsel's admission of guilt on those various points, certainly clearly in regard to accountability and the language that I expressed to the court and that was also repeated by the prosecutor in the case of the Puddle argument, provided that there was ineffective assistance of counsel and prejudice in this cause. In Judge Griffith's ruling in regard to granting the state's motion to dismiss the post-conviction petition at the second stage, the court noted, and I believe that's on the record on page 955, Supplemental Record 955, a couple things that Mr. Price said I just wanted to respond to before you start deliberating. When he got up here and made his closing argument to you, it sounds like his version of the events that occurred. Oh, I apologize. That's the prosecutor's argument. I apologize. Ah, I apologize. This is on Supplemental Record 1094. In addressing counsel's comments to the jury when Judge Griffith was ruling on the motion to dismiss, he stated, to comment on the individual points regarding the questionable statements during the opening and close, I do believe if you consider the totality of the statement's arguments and the totality of the evidence, I agree with the state that counsel was attempting or trying to make an argument. Well, attempting or trying to make an argument, this isn't some two-gram heroin case where somebody's going to get 410 probation. This is a murder in an attempt murder case where originally the defendant in this case was sentenced to 72 years in the Illinois Department of Corrections, trying to make an argument in a murder case, attempting to make an argument in a murder case. And I understand what Judge Griffith was saying here is not sufficient. It's ineffective assistance to counsel. In regard to prejudice, again, I think that there's when a trial counsel essentially admits an individual's guilt before a jury, I think there is prejudice almost automatically because you cannot have a fair trial when you have a fair trial. And I don't believe there was a fair trial in this case, not because Judge Griffith didn't try. I think he went overbound to make sure or attempt to make sure that Mr. Wingspan had a fair trial, but the statements of his attorney showed that he did not have a fair trial. As any, you know, for any prosecutor when you're trying a case, you know, when you have witnesses who have foibles or weaknesses, the case is always greater than, you know, the strength of the case is greater than the sum of its individual parts. For defense attorneys, we're always trying to pick out things, attack individual elements of the state's case, and then argue at that point that if you can't believe these certain elements of the case, the state has not proven the case beyond a reasonable doubt. The court in this case, Judge Griffith, ruled that the evidence in the case was not overwhelming, but he called it very strong. But nevertheless, when you look at each of the individual witnesses in this case, each of them had real significant demerits in terms of their credibility. Mr. Jelks was a friend of the victim, Mr. Kirk, in this case. He had a burglary conviction and an armed violence pending. Mr. Hodges was also a friend of the victim. He had pending charges. Eric Cunningham was a classic flipper. You know, his murder charges were dismissed, and so he could cut a deal for 20 years in the Illinois Department of Corrections for lesser charges. Mr. Killings, God bless him, was clearly an alcoholic, and his perception should have been, as I point out in my brief subject to more questions. And finally, Ms. Johnson, there was an issue of how she could have seen what she said she saw from the distance that she said it. So even if this court does not accept my argument that the admission of guilt in this case may throughout, but also particularly in regard to the issue of accountability, that you need more than that in order to establish prejudice, I would not believe that the evidence in this case was so overwhelming that there was a disconnect between trial counsel's conduct and statements in the case and the ultimate verdict in the case. And all of this is compounded by, as I put in the brief in the prejudice argument, the behavior of counsel. And I know Judge Griffith noted that Troubles is not an evil person, he's not a malignant person, but there's twice during the course of the trial where the trial had to be interrupted in Judge Griffith's courtroom. And Judge Griffith, who struck me as a fairly mild-mannered individual, had to tell him, that as trial counsel, to stop speaking so loudly and stop interrupting the proceedings because of his consultations with Mr. Insfied. Now, if that was all there was and there wasn't all this other admission guilt, then that's just something that happens during the course of the trial. But in the context of a case in which your trial counsel has made inappropriate statements, first, has no theory of the case, is just talking, and admits your guilt by reason of accountability. The lack of credibility of counsel in terms of being called to the proverbial woodshed and chambers cannot but hurt Mr. McSpadden and could not have but hurt Mr. McSpadden in his calls. And therefore, sirs, I respectfully request that Judge Griffith's decision granting the state's motion to dismiss be reversed. Thank you, Mr. Morris. Mr. Williams. Thank you, Your Honor. May it please the Court. Counsel. Counsel. My name is James Fred Williams, and it is my privilege to represent the state before this argument in court. This Court has previously reviewed this case on direct appeal where an independent raised a number of arguments, including the sufficiency of the evidence arguments. In rejecting that argument, this Court found, and I quote, that the state presented a great deal of evidence in showing the defendant's guilt. This Court further found that the state's evidence was more than sufficient for the jury to find the defendant personally discharged to fire. Now in this collateral proceeding, the defendant raises a number of ineffective assistance of counsel arguments. I will address the first one. Counsel has admitted that that was just a mistake in his briefing. With respect to the argument that counsel implicitly conceded guilt in closing argument. So I guess starting first, just going in order of the brief. The defendant argues that counsel conceded that Ms. Johnson had in fact correctly identified him and placed him at the scene of the crime. This argument really is based on strategically taking this statement out of context. The defendant claims that Ms. Johnson testified only that she identified him, forget the skin color, it's him, let's make it him. What counsel actually said was the lady who saw him, okay, my client, she said, she identified him, forget the skin color, it's him, let's make it him. Now in context, this is not implicitly conceding guilt or that the witness correctly identified the defendant. Rather, the counsel is just referencing this before attempting to undermine this testimony with apparent sarcasm. With respect to the accountability theory, defendant argues that counsel inferred guilt under accountability theory. However, counsel did explicitly argue that there was no agreement of common design to shoot anyone. And of course, as your honor just noted, defendant was ultimately found guilty of personally discharging the fire. That is, he wasn't found guilty under an accountability theory. Well, let me ask you something about that. The jury did not find under the enhancement provisions that defendant discharged the firearm and caused great bodily harm in doing so. Isn't that correct? If I can be a little more specific. You know, you're familiar with 15, 20, 25. This jury said the 20 applies, which means you discharge the firearm. Whereas the 25 would apply if you discharged the firearm and caused great bodily harm. To go a little further with it, it appears to me from the record that for whatever reason, the jury was never asked to determine whether he discharged the firearm and caused great bodily harm, but only asked to determine whether the defendant discharged the firearm. Am I right about that? To be honest, your honor, I believe that you are, but I don't believe that that issue was briefed. I don't think that I specifically examined the sequence of events that you're describing. Well, if the jury did not find him guilty of discharging the firearm and causing great bodily harm, you could argue logically, therefore, he was convicted under accountability. Right? That sounds accurate, your honor. Okay. Again, I think it's because of the instructions, but if you're not sure... Yeah, I really shouldn't speak on that. I'm sorry, your honor. Okay, very well. If it would please the court, I would be happy to provide supplemental briefing on the point. Again, I don't think that that specific issue was raised in the briefing, and I hadn't considered that. Well, maybe an opposing counsel can comment on that in rebuttal. Okay. Sorry to interrupt you. Anyhow, the other argument made with respect to implicitly conceding guilt and opposing argument was with respect to counsel referencing a statement that Mr. Cunningham, a witness, allegedly made to two other witnesses. This, however, counsel was referencing this, basically bringing it up so that he could attempt to undermine it. So, I mean, that's not at all clear from the defendant's briefing, because, again, this is strategically taken out of context. Now, with respect to defendant's second argument, he argues that counsel did competently cross-examine two witnesses, Ms. Hannah-Johnson and James Killings. With respect to Ms. Hannah-Johnson, she was a 53-year-old nurse and no involvement in this crime whatsoever. She was familiar with the defendant as an individual who hung out in the neighborhood. Now, there's a couple of points that she testifies to that counsel takes—defendant, excuse me, takes exception to. First is her testimony that she saw the defendant from between 100 and 500 yards away with a gun in his waistband, a large gun, to be clear. She also testified on direct examination that his skin tone appeared darker in the photo array that the police showed her. Now, defendant on appeal complains that counsel didn't further exploit these uncertainties by asking more questions on point. However, this is already pretty favorable testimony, and more questioning might well elicit clarifying responses, such as the distance wasn't, in fact, that great or that far. And to that end, in fact, when counsel began to touch on the point with respect to the skin color, Ms. Johnson did, in fact, clarify that it was only a little darker, not much darker, as she had originally. So counsel's basically just recognizing the risk of asking further questions on point and perhaps undermining already favorable testimony and chooses not to do so. That is just sound trial strategy. Now, with respect to Mr. James Killings, he was defendant's neighbor, he was an eyewitness to the shooting, he was immensely up to the shooting, he had alcohol issues. Now, in the briefing, defendant argues that counsel only briefly touched on this issue. That is just a misrepresentation of the record. The super majority of counsel's questions of Mr. Killings were focused on his alcohol issues. And from that, he listed a testimony that Mr. Killings drank daily, that he started drinking in the morning, generally speaking, that he was drinking the day of the shooting, before the shooting, that he, in fact, did drink an entire pint of wine before the shooting, that he was buzzed at the time of the shooting, that he then drank after the shooting, and frankly, to the point of intoxication such that when police went to initially interview him, he was so intoxicated they basically had to take him home and talk to him at a later date whenever he had sobered up. The point here is that counsel did, in fact, quite thoroughly examine the alcohol issues. Now, defendant, however, complains that counsel didn't ask very specific questions, such as the degree of his alcoholism, whether he'd ever been hospitalized, whether he'd ever experienced hallucinations, and the degree to which his alcoholism affected his memory and recall. Now, admittedly, these sort of questions might well have elicited some sort of responses that might have undermined, nominally, his reliability a little more, but at the same time, like the other issues, they could have also elicited, you know, basically gave Mr. Killings the opportunity to rehabilitate his testimony by saying that perhaps he's a functioning alcoholic who's never been hospitalized or experienced hallucinations, and, in fact, has a great memory standing his alcohol issues. So, again, not diving into these very specific issues after already eliciting pretty favorable testimony, was just sound trial strategy. Now, with respect to prejudice, even if any of these various claims can amount to deficient performance, then it cannot satisfy the prejudice from the eventors. First of all, there were a deal of evidence showing he's guilty in this case, as the court concluded in the previous appeal. And, moreover, again, I guess I should just note that a lot of the prejudice arguments, like a lot of the rest of his brief, are really, and I hate to have to go here, but really it seems like they're based on misrepresentations, misquotations, or strategically removing statements out of critical context. And, ultimately, in this case, as this court is well aware, there were a lot of, there's a lot of evidence, a lot of witnesses. I believe there were at least five different witnesses that saw the defendant, placed him at the scene. I think there were four different witnesses that saw him shooting. Three witnesses placed the large caliber gun in his hand. And, of course, it was well established that there were basically two guns being fired, one that was a relatively small caliber, .25 caliber, and the other one was roughly a .38 caliber, a much larger caliber gun. And three different witnesses, including Ms. Johnson, placed the large caliber gun in the defendant's hand. And then, of course, the subsequent search of his home revealed five large caliber bullets. So, ultimately, the defendant cannot establish that there was a reasonable likelihood of a different result, even if counsel performed efficiently, did, in fact, perform efficiently in any one of the ways in which counsel plays off the event. Are there any further questions? Seeing none, thank you, Mr. Williams. Thank you. Mr. Morris. Well, I feel honored to approach the bench, though, because of Your Honor's question. I'm not sure. I hadn't thought about that, to be quite honest with you. And, though I do know, well, my first position is it doesn't matter. It does not matter whether, though the jury received verdict forms for accountability, it was argued to the jury by the prosecution. I don't believe it matters if an attorney admits his client's guilt by reason of accountability. That is not absolved by reason of the fact that the jury signed a verdict form saying that he had personally discharged a firearm, which they did, at least in the context of the first-degree murder. And also in regards to the attempt for a first-degree murder of Jamal Jelks, as I'm looking at the finding of the jury toward the end of the transcript. Could Your Honor clarify the question for me again? Yeah. I was asking how the jury was instructed concerning the 15, 20, 25 life enhancements. And I was trying to explain to the opposing counsel that it appears to me, from my review of the record, they were never submitted a question of whether defendant discharged a firearm and caused great bodily harm in doing so, but were submitted only the question whether defendant discharged a firearm in the commission of the offense, which is why there was a 20-year enhancement rather than a 25-year enhancement. Okay. And actually it was an argument, I think, that may benefit you, although not clearly, because if they didn't make the finding that your client's bullet killed the person, then that would seem to lend to your argument that it was under an accountability theory rather than a knowing or intentional killing, and yet it is inconsistent with what their ultimate finding was. I was just trying to make sure I understood that. I understand, Your Honor, and as I said, I did not recognize that argument. I hope I was not ineffective for failing to do that. I don't think so. I don't think it makes any difference, but I wanted to hear what the prosecutor had to say about that. Sure. I do know that the bottom line is that there were verdict forms which stated that, and the jury found beyond reasonable doubt, that Mr. McSpadden had personally discharged a firearm, both in relation to the homicide as well as at least one of the attempted murders. You know, you sort of did get me to answer a question there. Yep. Kudos to you. But, and then just to, I don't believe that if you read counsel's argument, it's very difficult to read, and God bless the gentleman, but it's unclear what the theory of the defense is, and I don't, I disagree with Mr. Williams that I took statements that were made that were pointed out in the brief, obviously with the exception of the opening statement, for which I apologize, that I'm taking somehow out of context. Even the state recognizes in its brief in this case that, and I don't want to misquote it anyway, but that there were points at which, due to the nature in which, how counsel spoke, that it was difficult to follow. And the bottom line is, Your Honors, that I believe there was sufficient evidence in this case to establish that trial counsel admitted my client's guilt at trial. And there's no number of witnesses or videotape testimony or amount that could eliminate the prejudice when counsel does that, because the law is that you cannot admit your client's guilt, whether it's by accountability or by principle, without the knowing consent of your client. Thank you. Thank you, Mr. Morris. We'll take this matter under advisement. Court will be in recess.